# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PHENIX LONGHORN LLC, | § |
| *Plaintiff*, | § § § |
| v. | § § |
| AU OPTRONICS CORPORATION, HISENSE ELECTRONICA MEXICO, S.A. DE C.V., HISENSE USA CORPORATION, HISENSE VISUAL TECHNOLOGY CO., LTD., *and* DOES 1–10, | § § § § § § § § |
| *Defendants*. | § § |

CASE NO. 2:23-CV-00477-RWS-RSP

## MEMORANDUM ORDER

Before the Court is Plaintiff's Motion to Strike Portions of the Hybrid Witness Disclosures of Mr. Center Chen and Mr. Bear Syong. **Dkt. No. 258**. Because the Court carried Plaintiff's Motion *in Limine* No. 1, **Dkt. No. 338** at 1–7, with respect to this motion, the issues raised in the motion *in limine* are also before the Court. Both are fully ripe for adjudication. See Dkt. Nos. 296, 328, 363, 371. For the reasons and to the extent discussed below, the Court grants Plaintiff's Motion to Strike and Motion *in Limine* No. 1.

### I.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In it, experts are divided into those who must provide a report under Rule 26(a)(2)(B), and those who do not under Rule 26(a)(2)(C). Witnesses who are required to submit a report are those who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Witnesses who do not meet the definition of subsection (B) fall instead into Rule 26(a)(2)(C) and are referred to as "non-retained experts."

"The distinction between retained and non-retained experts should be interpreted in a common sense manner." *DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016) (citations omitted). A retained expert is one who, "*without prior knowledge of the facts giving rise to litigation*, is recruited to provide expert opinion testimony." *Id.* (emphasis added). On the other hand, "Rule 26(a)(2)(C) addresses the disclosure of witnesses *who were involved in the events leading up to the litigation* and may testify both as an expert and as a fact witness." *Diamond Consortium, Inc. v. Manookian*, No. 4:16-CV-00094, 2017 WL 2936218, at *2 (E.D. Tex. July 10, 2017) (Mazzant, J.) (emphasis added) (citing *LaShip, L.L.C. v. Hayward Baker, Inc.*, 680 F. App'x 317, 324 (5th Cir. 2017)). "A non-retained expert's testimony under Rule 26(a)(2)(C) 'arises not from his enlistment as an expert, but rather, from his *ground-level involvement in the events giving rise to the litigation*'" *Id.* (emphasis added) (citations omitted). But a non-retained expert who goes too far may venture into the "specially employed" category under Rule 26(a)(2)(B) if he begins to offer "opinion testimony" about "facts giving rise to the litigation," of which he "has no personal involvement in . . . regardless of whether he is compensated or simply volunteers." *Tolan v. Cotton*, No. CIV.A. H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015).

Even if a purported Rule 26(a)(2)(C) witness is an employee, they "must testify from the personal knowledge they gained on the job," related to the performance of their official duties, which "may limit their testimony." *United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, No. 3:19-CV-02486, 2024 WL 4508961, at *10 (N.D. Tex. Oct. 15, 2024); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) ("[B]ut only to the extent that these witnesses acquired relevant personal knowledge while performing their project duties."); *accord Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31

F.4th 238, 253 (4th Cir. 2022). "These experts still 'may be asked questions that implicate their expertise,' however, 'they cannot be asked to opine about broader issues beyond their own personal involvement.'" *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins. Co.*, 627 F. Supp. 3d 715, 723 (S.D. Tex. 2022) (citation omitted). As noted in *LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475 (E.D. La. Nov. 13, 2013), *aff'd*, 680 F. App'x 317, 324 (5th Cir. 2017) (holding that the district court did not abuse its discretion by concluding that a purported Rule 26(a)(1)(C) witness's "opinion was prepared specifically for litigation and [therefore] did not equate to the ground-level opinion of an expert who was involved in the events leading up to litigation"):

> While the Fifth Circuit has not directly addressed this issue, other circuits have held someone may be a witness not required to produce a report as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to other portions. These cases relate to treating physicians, the subject of most of the 26(a)(2)(C) caselaw, and distinguish between opinions that the treating physician arrives at in the course of treatment, and opinions that the treating physician arrives at after treatment, for the purposes of litigation.

*Id.* at 480 (surveying cases).

Under related Rule 37, "if a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). When evaluating whether a Rule 26 violation is harmless, courts consider four factors: "(1) the importance of the evidence, (2) the prejudice to the opposing party in including the evidence, (3) the possibility of curing such prejudice by granting a continuance, and (4) the explanation for the party's failure to disclose." *See Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.*, 114 F.4th 382, 405 (5th Cir. 2024) (citation omitted).

## II. ANALYSIS

Plaintiff moves to strike portions of Messrs. Center Chen and Bear Syong's disclosures regarding U.S. Patent Nos. 7,233,305 ("'305 Patent") and 7,557,788 ("'788 Patent"). Dkt. No. 258 at 1. As carried from the Motion *in Limine*, Plaintiff additionally moves to exclude an exhibit to the Rule 26(a)(2)(C) disclosures related to AUO's independent development story and Ms. Tang's testimony relating to those two patents. Dkt. No. 338 at 10–11. The Court addresses each in turn.

A. <u>Motion to Strike Mr. Chen's Disclosure</u>

Plaintiff first moves to strike, for violation of Rule 26(a)(2)(C), portions of Mr. Chen's disclosure dealing with his interpretation of the infringement read of the '305 and '788 Patents on AUO's products. Dkt. No. 258 at 6–9. Many of its arguments, however, go to discovery violations of the initial disclosures and supplementation provisions of Rule 26, rather than Rule 26(a)(2)(C). In pertinent point, Plaintiff complains that AUO disclaimed knowledge of the internal circuitry components of its Pgamma ICs because they could not get such information from suppliers, which is inconsistent with arguments it now makes through Mr. Chen that the functionality of the Pgamma ICs does not infringe. While Defendants address this at several points in the briefing, *see* Dkt. No. 296 at 7–11, the Court cannot see how AUO's representations about what it can and cannot get from suppliers is relevant to Rule 26(a)(2)(C).

However, Mr. Chen's own statements are relevant. Plaintiff also argued that Mr. Chen represented that "AUO does not teardown, decap, or reverse engineer the Pgamma ICs that it buys from suppliers." *Id.* at 6–7 (citing Witness Disclosures, Dkt. No. 258-3 at 11 ¶ 12). However, Plaintiff argues, Mr. Chen then goes on to offer opinions about "the designs and internal componentry of AUO's [P]gamma ICs," which is barred because he "disclaimed any of the

- 4 -

'ground-level involvement' in the design of the internal structure of AUO's [P]gamma ICs[.]" *Id.* at 7 (citations omitted).

In response, Defendants argue that Mr. Chen's prior statements disclaiming knowledge of the Pgamma ICs design and inner circuitry are consistent with his disclosure because his opinions "are properly limited to the design and functionality of the Accused Pgamma ICs, as supported by RFQs, schematics and datasheets [that were] produced," not "the internal circuitry." Dkt. No. 296 at 8–9. Defendants also argue that Plaintiff's cited cases draw a distinction where testimony is "not based on an expert's ground level involvement . . . or those experts testified on subject matter that they had not previously disclosed before trial," and "Mr. Chen is not a third-party consultant . . . but a trained engineer" with "two decades" at AUO, "intimate[] familiar[ity] with the development," "functionality," and "design requirements" of the Pgamma ICs from his experience as a "lead" on its development. *Id.* at 9–10.

Looking at his deposition testimony, which was taken on August 15, 2025, before the at-issue disclosures are dated, October 21, 2025, *see* Witness Disclosures at 61, Mr. Chen has been at AUO for 24 years, since June 2001. Chen Depo., Dkt. No. 258-4 at 21:23–22:4. He started work as a "Senior engineer" on the "Display product[s]" team and was promoted "a little over a year later" to manager "in charge of EE design," and then to "senior manager," until he became the "Director of desktop display product design" in 2007. *Id.* at 22:5–23:23. While Plaintiff is accusing AUO of having knowledge of the Asserted Patents as part of a willfulness claim, that claim is seemingly not directed to Mr. Chen. *See id.* at 45:4–17 (questioning directed to a Mr. "Jalin Liao"); *id.* at 54:7–14 (directing such questioning at emails sent to a Mr. "Collins Cheng"). Mr. Chen stated that he did not agree that AUO knew about the Asserted Patents and he was only exposed to them through the litigation. *SeePatents and*–8, 58:11–22 (admitting that he saw the datasheet

that contained a statement about protection by the Asserted Patents only "after the litigation had been filed[,] [a]nd we went to check for it"). Mr. Chen also represented that he worked on the research and development of the Pgamma ICs for AUO and with its suppliers, but AUO does not "have the IC internal [diagrams] because these suppliers would, based on our spec[ification], design their own circuitry, and we do not review the internal IC design." *Id.* at 93:25–97:16.

Based on the evidence cited in his disclosure, Mr. Chen's disclosure is not inconsistent with his deposition testimony, as Plaintiff argues. His disclosure is, in fact, consistent with the process that Defendants describe: AUO supplies an RFQ requiring certain functionality, and integration with a larger circuitry, to suppliers, and suppliers then provide the Pgamma ICs that AUO can integrate into a final product. It does appear to the Court that Mr. Chen has sufficient experience with this process, the design requirements supplied to AUO's suppliers through the RFQs, and the functionality of the Pgamma chips, to testify about those topics, as outlined in his disclosure. In fact, Plaintiff really dispute that Mr. Chen has sufficient ground-level knowledge to testify about these topics. *See* Dkt. No. 258 at 8–9 ("Phenix does not seek to strike Mr. Chen's evaluation of the RFQ documents. Rather, it challenges only those opinions that exceed the scope of his ground-level involvement and improperly purport to describe the internal circuitry of the supplier-provided pgamma ICs."). Therefore, Mr. Chen is allowed to testify to the function and requirements that AUO prescribes for its suppliers through the RFQ documents, with which he has intimate ground-level familiarity.

However, because he only learned about the Asserted Patents through the course of this litigation, and did not have any ground-level experience or knowledge of them beforehand, he cannot then testify, as Defendants wish for him to, as to his opinion of the scope or coverage of the claims, as the Court construed them, or his opinion on whether the Accused Products

containing the Pgamma ICs actually infringe the Asserted Patents. That would necessarily involve a discussion of claim scope and evaluation of the Asserted Patents. Although Defendants wish to draw a distinction between caselaw and the present situation based on whether Mr. Chen is a "third party consultant" (e.g., a "retained" expert, under Rule 26(a)(2)(B)), and his familiarity with the underlying development and functionality, that does not save his claim construction or infringement opinions where he does not have the required ground level familiarity, prior to this litigation, with the Asserted Patents.

Accordingly, the Court finds that the Motion to Strike should be and hereby is **GRANTED** to the extent that Mr. Chen's disclosure discussing the Asserted Patents, including discussion of claim scope and infringement, is stricken. As noted above, this does not prevent Mr. Chen from opining at trial about his ground level experience with AUO's development and the required functionality of the Pgamma ICs through his interpretation of the produced RFQs.

B. Motion to Strike Mr. Syong's Testing (Exhibit 2 to the Disclosures)

Plaintiff next moves to strike Mr. Syong's testing of a Pgamma IC on AUO's TCON board (as shown in Exhibit 2 to his declaration), as well as Mr. Syong and Mr. Chen's reliance on that testing. Dkt. No. 258 at 9. Plaintiff puts forth four categories of arguments for its exclusion: (1) it is inconsistent with Mr. Syong's limitations as a non-retained expert under Rule 26(a)(2)(C), (2) the timing of the disclosure, along with the lack of transparency regarding testing methodology, renders the testing unverifiable, and (3) relatedly, Defendants "prevent[ed] [Plaintiff] from conducting independent verification" by not providing the exact IC samples it tested, and (4) it is otherwise unreliable under Federal Rule of Evidence 702 and unduly prejudicial under Rule 403. Dkt. No. 258 at 9–14.

To the extent that Plaintiff argues Mr. Syong's testing should be excluded for inconsistency with his role as a Rule 26(a)(2)(C) non-retained expert witness, the Court disagrees. The results of the testing itself are facts, not opinions falling under the purview of Rule 26(a)(2)(C). He is not completing testing as a Rule 26(a)(2)(C) expert witness, but rather as a fact witness.

Defendants respond that Mr. Syong and Mr. Chen's disclosures based on Mr. Syong's testing data should not be excluded under *LaShip* because "the expert in [that case] relied on testing done by others," whereas the testing here was directly done by Mr. Syong. If that were the rule, then at least Mr. Chen's opinions in his disclosure based on Mr. Syong's testing would be excluded; but that is not the rule. Instead, as explained in *LaShip* by Judge Brown after a survey of cases, precedents establish that the rule is defined around whether a non-retained expert arrives at opinions in the course of their ground-level involvement in the events giving rise to the litigation, which are allowed, or opinions arrived at after that involvement, for the purposes of litigation. *LaShip*, 296 F.R.D. at 480. To the extent that both Messrs. Syong and Chen express opinions based on Mr. Syong's testing of the Pgamma IC on the TCON board, those opinions were formed after any involvement they had in the design, development, and specification of the Pgamma ICs at AUO. Those *opinions* are therefore stricken.

Accordingly, the Motion to Strike is **GRANTED** as to Messrs. Chen and Syong's opinions in their Rule 26(a)(2)(C) disclosures that rely on Mr. Syong's testing of the Pgamma IC in the TCON board. This does not prevent Defendants' expert, Dr. Alfred Ducharme, from relying on that testing data in his own analysis, to the extent it is referenced in his reports. The Court finds that Plaintiff's other arguments seeking to exclude the testing data altogether are unpersuasive.[1]

---

[1] To the extent that Plaintiff complains about a failure to disclose such testing data, and exact samples used in that testing, during fact discovery for independent verification, that can be

C. Motion *in Limine* No. 1 Regarding AUO's Independent Development Story (Exhibit 1 to the Disclosures)

Plaintiff's Motion *in Limine* No. 1 retreads similar ground. The Court does not address the repeated arguments a second time. Plaintiff's first additional request is to exclude Exhibit 1 to Defendants' Rule 26(a)(2)(C) disclosures, and Mr. Chen and Ms. Tang's reliance on it. Dkt. No. 338 at 4, 7. Plaintiffs argue that the exhibit contains patents from the 1970s, 1980s, and early 2000s, as well as Mr. Chen's annotated analysis on them, when they clearly predate his employment, meaning he does not have the requisite ground-level knowledge to assist the jury as required under Rule 26(a)(2)(C). The Court **GRANTS** Plaintiff's Motion *in Limine* No. 1 on this ground for the same reasons as the Court granted Plaintiff's Motion in Limine No. 4, also relating to AUO's patents and independent development story.

Accordingly, Defendants are barred from referring to the scope and coverage of any of AUO's patents, beyond referencing the fact that Defendants have numerous patents in this general technical field. Because Defendants concede that they have no expert testimony that the accused products practice any particular patents of Defendants, and because the lay witnesses are not competent to provide that testimony, Defendants' own patents are not relevant to damages or to willfulness. Defendants can tell their independent development story without referencing patents that are not shown to be contributing to the accused products. Furthermore, any probative value such patents may have is far outweighed by the likelihood of jury confusion as to whether such patents are a defense to infringement, which they are not as a matter of law.

---

addressed through the additional deposition questioning of Mr. Syong that the Parties agreed at the Pretrial Conference would take place before the trial.  The testing is not excluded.

D. <u>Motion *in Limine* No. 1 Regarding Ms. Tang's Disclosure</u>

Plaintiff also adds new argument that Ms. Tang's disclosure opinions regarding claim construction and infringement of the '305 and '788 Patents are improper because she lacks adequate ground-level knowledge relating to them prior to the litigation. Dkt. No. 338 at 6–7. The Court agrees, for the same reasons as outlined above with respect to Mr. Chen, that Ms. Tang cannot testify to infringement or claim construction of these patents. Consequently, Plaintiff's Motion in Limine No. 1 is also **GRANTED** to the extent that Ms. Tang cannot testify to the Asserted Patents, including discussion of claim scope and infringement. Again, as with Mr. Chen, this does not prevent Ms. Tang from opining at trial on her ground level experience with AUO's development of the accused products and of the required functionality of the Pgamma ICs.

## III.   CONCLUSION

Accordingly, for the reasons provided above, Plaintiff's Motion to Strike the Expert Disclosures of Messrs. Bear Syong and Center Center, Dkt. No. 258, and Motion *in Limine* No. 1, Dkt. No. 338 at 1–7, are **GRANTED** to the extent provided above, and are otherwise **DENIED**.

**SIGNED this 19th day of December, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE