# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PHENIX LONGHORN LLC, | § |
| *Plaintiff*, | § §  |
| v. | § § |
| AU OPTRONICS CORPORATION, HISENSE ELECTRONICA MEXICO, S.A. DE C.V., HISENSE USA CORPORATION, HISENSE VISUAL TECHNOLOGY CO., LTD., *and* DOES 1–10, | § § § § § § § CASE NO. 2:23-CV-00477-RWS-RSP |
| *Defendants*. | § § |

## **MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Strike Portions of Expert Reports of Joseph McAlexander Regarding Infringement and Validity. **Dkt. No. 261**. The motion is fully briefed. *See* Dkt. Nos. 302, 324, 365. In the Motion, Defendants seek to strike portions of Plaintiff's technical expert's reports that rely on allegedly (1) previously undisclosed infringement theories—especially those related to U.S. Patent No. 7,557,788 ("'788 Patent")—(2) an untimely erratum alleging infringement of limitation 1[d] of U.S. Patent No. 7,233,305 ("'305 Patent"), and (3) opinions inconsistent with the Claim Construction Order. *See* Dkt. No. 261 at 1. For the reasons set forth below, the Court denies the Motion.

### I.     LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("[A] judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. DISCUSSION

Defendants raise three broad arguments for exclusion of portions of Mr. McAlexander's reports. *See* Dkt. No. 261 at 3–15. The Court addresses each in turn.

A. <u>Previously Undisclosed Infringement Theories</u>

Defendants first argue that several specific theories of Plaintiff were untimely disclosed. *See* Dkt. No. 261 at 3–11. Specifically, Defendants argue that the following theories were not timely disclosed for the following reasons: (1) Mr. McAlexander's theory that the "the generation of an MBACT2 signal indicates the existence of a multiplexer, as required by claim 1 of the '305 patent" was not disclosed in Plaintiff's original or first amended infringement contentions; (2) Mr. McAlexander's theory that "'circuits for programming coupled to a multiplexer' can be I2C buses" was explained for the first time in his deposition and is inconsistent with Plaintiff's prior claim construction positions; (3) Mr. McAlexander's theory that "an RC filter satisfies the required damping circuit" was not disclosed in any of Plaintiff's infringement contentions; (4) Plaintiff alleged infringement under 271(g) of the '788 Patent only with respect to Hisense, and not to AUO, until Plaintiff's second amended infringement contentions; and (5) Mr. McAlexander's theories for limitations 1[b], 1[c], and 1[d] of the '788 Patent were not disclosed until Plaintiff's second amended infringement contentions. *See id.* at 3–9. Defendants argue that the unfair prejudice of not excluding portions of Mr. McAlexander's reports dealing with these allegedly untimely theories is high because they deprived Defendants of "the chance to request and take proper

3

discovery" and the opportunity "to consider [Plaintiff]'s positions and how they would impact Defendants' invalidity, non-infringement, or [NIA] positions" before submitting its own experts' reports. *See id.* at 9–11.

The Court disagrees that these theories should be stricken. At least with respect to items (4) and (5), the Court has already considered and rejected Defendants' arguments for striking. *See* Dkt. No. 424 (denying Defendants' Motion to Strike Plaintiff's Second Amended Infringement Contentions). Additionally, with respect to item (1), Defendants concede that this theory was at least partially addressed in Plaintiff's Second Amended Infringement Contentions, which the Court already refused to strike. *See* Dkt. No. 261 at 3–4. To the extent that Defendants do not concede that the second amended contentions provide notice because they allegedly only included "citations to a single RFQ and two datasheets for the G-1422," the Court disagrees that Plaintiff's theory with respect to the multiplexer was insufficiently disclosed in the contentions with respect to all three products—Mr. McAlexander's report merely expands on what was disclosed with respect to the three allegedly infringing products with additional evidence and explanation.

Defendants' other arguments with respect to items (2) and (3) are similarly unpersuasive. As Plaintiff explains with respect to item (2), "an I2C serial bus and an I2C serial interface are [] distinct, and . . . Mr. McAlexander has [n]ever asserted . . . that an I2C serial bus or . . . interface constitutes a multiplexer." *See* Dkt. No. 302 at 5. And as Plaintiff's contentions make clear, its theory is not, as Defendants characterized it, that "I2C buses" alone can satisfy the "circuits for programming coupled to a multiplexer" limitation, but instead that the "interface to the memory locations is accomplished through the I2C serial interface," which is associated with a multiplexer. *See id.* at 5–6 (citing Dkt. No. 302-3 at 44). Similarly, with respect to item (3), while Plaintiff's original contentions do not explicitly refer to a passive (resistor-capacitor) "low pass filter" as

4

satisfying the required damping limitation, the oscilloscope output is consistent with the output of a low pass filter (as later clarified by Mr. McAlexander in his reports), and the contentions explained that this output was consistent with damping (which may be done by, *inter alia*, implementation of a low pass filter). *See id.* at 7 (citing Dkt. No. 302-3 at 66).

Accordingly, the Court finds that the Motion should be **DENIED** on these issues.

B.  Failure to Timely Analyze Limitation 1[d] of the '305 Patent

Defendants next argue that Plaintiff "disclosed no infringement theory with respect to limitation 1[d] of the '305 Patent" because Mr. McAlexander's erratum, which stated that his analysis of limitation 1[d] is accomplished by prior analysis with respect to limitation 1[b], is untimely and improper. *See* Dkt. No. 261 at 11–13. Specifically, Defendants argue that this this "'errata' is not merely a typo, [but] introduces a new infringement theory not found in his report, which omitted" discussion of the limitation 1[d], which is "separate and distinct" from limitation 1[b]. *See id.* at 11–12. Defendants finally argue that his failure to disclose this theory "prejudices Defendants . . . depriving [them] of fair notice and the opportunity to address these arguments in discovery. *See id.* at 13.

Defendants rely in large part on *Science Applications International Corp. v. United States*, wherein "attached as an exhibit to its response, [plaintiff] included a previously undisclosed, supplemental declaration" of its expert that was 29-pages long, and contained "substantive" analysis of "undisclosed theories of infringement" rebutting defendant's "theory of non-infringement" as well as additional theories and commentary. *See* 169 Fed. Cl. 643, 663 (Fed. Cl. 2024). The Court of Federal Claims, unsurprisingly, struck the supplement. *See id.* at 676–77. This case is materially distinguishable in at least two key respects: Mr. McAlexander's erratum is liberally 2 pages long (it includes four brief paragraphs, with two tables, of corrections); and the erratum merely recites, with respect to limitation 1[d], in a table, to "see *supra* Claim Limitation

5

1[b]." *See* Dkt. No. 302-8 at 1–2. This type of reference to prior analysis by the expert here is not the same type of substantive analysis that was at issue in *Science Applications*. *See* 169 Fed. Cl. At 663, 676–77. Defendants do not further argue that the erratum itself was untimely, apart from arguing that it is in fact an untimely supplement rather than an erratum. *See* Dkt. No. 261 at 11–13. The Court additionally finds that any prejudice that Defendants now claim is negligible, considering that the analysis for limitation 1[d] is entirely encompassed by limitation 1[b], and Defendants had sufficient opportunity to, and did, depose Mr. McAlexander as to his opinions on both limitations. *See generally* Dkt. No. 302-9.

Consequently, the Court finds that the Motion should be **DENIED** on this issue, as well.

C. Ignoring the Court's Claim Construction

Defendants finally argue that portions of Mr. McAlexander's reports are inconsistent with the Court's claim construction with respect to two terms: the "predetermined gamma reference voltage signal display condition" term from Claim 1 of the '305 Patent, and the "means for executing . . ." term from Claim 1 of the '788 Patent. *See* Dkt. No. 261 at 13–15. The Court already compared and found Mr. McAlexander's analysis of the "means for executing . . ." term to be consistent with its claim construction analysis and Order, *see* Dkt. No. 411 at 9, and therefore sufficiently reliable to withstand this *Daubert* challenge.

With respect to the "predetermined gamma reference . . ." term, the Court previously construed this term, based on the Parties' agreed constructions, to mean "A display condition established by the predetermined gamma reference voltage signals based on the application that is being displayed, external environment such as temperature and ambient light, or the personal preference of the user." *See* Dkt. No. 176 at 48. Defendants argue that Mr. McAlexander's analysis that AUO's Pgamma ICs meet this limitation is inconsistent because his report does not mention

6

any testing and he testified that "any data written into memory would be a personal preference of the user," which allegedly "eviscerates" the Court's construction. *See* Dkt. No. 261 at 14.

However, as Plaintiff points out, it is consistent with the Court's claim construction to have "[a] display condition established by the predetermined gamma reference voltage signals based on . . . . the personal preferences of [a] user," which is the theory that Mr. McAlexander proceeds with in his reports, and that he elaborated on in his deposition. *See* Dkt. No. 302 at 12–13. Defendants note as part of their argument that Mr. McAlexander explained in his deposition that "an AUO employee testing the display could be a user." *See* Dkt. No. 261 at 14 (citing Dkt. No. 261-ex10 at 132:14–133:4). If an AUO employee could be a user, and set the gamma reference voltage signal, then the display condition can be established by that process, and it is completely consistent with the Court's construction. The Court therefore finds that Mr. McAlexander's analysis of this limitation is consistent with its claim construction, as agreed by the Parties, and sufficiently reliable so as not to warrant exclusion.

Accordingly, the Court finds that the Motion should be and hereby is **DENIED**.

### III. CONCLUSION

For the reasons provided above, Defendants' Motion to Strike Portions of Expert Reports of Joseph McAlexander Regarding Infringement and Validity is **DENIED**.

**SIGNED this 12th day of January, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE