# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PHENIX LONGHORN LLC, | § |
| *Plaintiff*, | § |
| | § |
| v. | § |
| | § |
| AU OPTRONICS CORPORATION, | § |
| HISENSE ELECTRONICA MEXICO, | § CASE NO. 2:23-CV-00477-RWS-RSP |
| S.A. DE C.V., HISENSE USA | § |
| CORPORATION, HISENSE VISUAL | § |
| TECHNOLOGY CO., LTD., *and* | § |
| DOES 1–10, | § |
| | § |
| *Defendants*. | § |

## MEMORANDUM ORDER

Before the Court is AUO's Opposed *O2 Micro* Motion for Further Claim Construction. **Dkt. No. 307**. The Motion is fully briefed. *See* Dkt. Nos. 369, 403, 406. AUO seeks additional claim construction of the term "multiplexer" from Claim 1 of U.S. Patent No. 7,233,305 ("'305 Patent") because Phenix is allegedly now satisfying the "circuits for programming" and "multiplexer" limitation with "I2Cs," and AUO contends—and Phenix disputes—that there must be some "structural" boundary between "circuits for programming" and "multiplexer," as Claim 1 uses the two terms. *See* Dkt. No. 307 at 1–2. Having considered the briefing, for the reasons set forth fully below, the Court finds that the Motion should be denied.

### I.   LEGAL STANDARD

"District courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1361–62, 1362 (Fed. Cir. 2008). Instead, district courts are to resolve any

"fundamental dispute regarding the scope of a claim term." *Id.* at 1363. "[T]he court, not the jury, must resolve" such disputes regarding the scope of claims. *Id.* at 1360.

## II. DISCUSSION

The claim at issue is Claim 1 of the '305 Patent, and the limitation at issue is Limitation 1[b], which recites "circuits for programming coupled to a multiplexer for addressing and programming said storage cells, wherein the addressing is based on a plurality of inputs." '305 Patent at 7:48–50.

As a threshold matter, AUO argues that the report of Phenix's expert, Mr. McAlexander, is insufficient regarding satisfaction of the claimed multiplexer. *See* Dkt. No. 307 at 6–8. For example, AUO argues that Mr. McAlexander's report did not identify the inputs for the multiplexer. *See* Dkt. No. 403 at 3–4. AUO also argues that Phenix is attempting to use Mr. McAlexander's deposition to fill gaps in Mr. McAlexander's report. *See id.* at 3. These arguments, however, are not fundamentally related to the claim scope but instead relate to sufficiency of Mr. McAlexander's report and do not bear upon whether any supplemental claim construction is necessary.

The dispute presented in AUO's Motion is fundamentally a factual dispute regarding infringement, which is perhaps most apparent in the last paragraph of AUO's Statement of Facts. *See* Dkt. No. 307 at 9–10. That paragraph states the following:

> When asked to identify where he identified a multiplexer in his report, Mr. McAlexander testified that the multiplexer is "located in that communication path between the controller and the nonvolatile memory." But he admitted that "the function block diagram itself does not show a multiplexer." When pressed, he agreed "the functionality of this function block would require a multiplexer between the controller and the NVM." This testimony stands in contrast with his report, which simply states that

2

> "AUO's pgamma ICs also contain 'a multiplexer'" with no explanation how this was confirmed or what structure constitutes the multiplexer.

*Id.* (citations omitted). Likewise, AUO summarizes a portion of Mr. McAlexander's deposition testimony, as follows:

> Mr. McAlexander testified to a functional allocation that assigns all addressing work to the "circuits for programming" while limiting the multiplexer to a routing function. He identified the "circuits for programming" as the I2C controller and testified these circuits receive the address, decode it, and "make[] a decision" based on "all of the inputs" and "all the addresses." When asked what function the multiplexer performs, he responded "Steering. The directing." Mr. McAlexander confirmed the multiplexer simply acts like a "traffic cop" and is akin to "coming to a . . . five-road split and you choose which direction you go. The multiplexer directs the traffic." He explicitly stated, "the multiplexer is not the one doing the addressing." Here, all addressing functions—receiving addressing, decoding them, making logical decisions—occur within the I2C before the multiplexer acts. The multiplexer's sole function is routing the result to the selected bank.

*Id.* at 13 (citations omitted). AUO argues that "Mr. McAlexander's description of the multiplexer 'steering' to banks actually corresponds to the bank selection function performed by B0–B2, which is separately claimed in [Limitation] 1[h]," *id.* at 13, but Phenix responds that Mr. McAlexander identifies different structure for bank selection, *see* Dkt. No. 369 at 9 (citing Dkt. No. 369-4 at 101:10–102:25). This dispute pertains to the infringement analysis, not the scope of the claim language.

The briefing further demonstrates factual disputes regarding infringement, particularly as to whether Phenix has identified any "multiplexer" that works together with "circuits for programming," so as to perform addressing and programming, as claimed. *See, e.g.*, Dkt. No. 369 at 4 ("A multiplexer coupled to the I2C interface in the accused pgamma ICs satisfies the 'multiplexer' limitation, consistent with the Court's construction of the term,

3

as the multiplexer routs the addressing and programming data from the 'circuits for programming' to the storage cells."). But Phenix's understanding of the claim is reinforced by disclosure in the specification regarding a "programming engine" working together with a "mux" (multiplexer), as shown in the following excerpt therefrom:

> The programming engine 310, coupled to the mux, comprises an Analog Input which will be used to set the reference voltage level and a R/W control signal for a corresponding gamma reference controller. The mux 320 connects signals from the programming engine 310 to any one of the programmable analog floating gate memory cells 330 through 337, depending on three address inputs (A0, A1, and A2). Address inputs are used to select which cell is being written to at any time.

'305 Patent at 3:52-4:3.

Finally, AUO does not propose a construction of the allegedly disputed multiplexer term. Instead, AUO merely suggests that "the Court should find that the multiplexer *must play some role in addressing*." *See* Dkt. No. 307 at 15 (emphasis added); *see also* Dkt. No. 403 at 5 ("request[ing] that the Court construe multiplexer to require addressing functionality."). It is unclear to the Court *what* role in addressing AUO proposes the multiplexer plays. The lack of any specific proposed construction underscores this Court's finding that AUO's Motion is essentially seeking a factual finding of non-infringement. The Court thus finds that AUO's Motion should be and hereby is **DENIED**.

### III. CONCLUSION

Accordingly, for the reasons and to the extent set forth fully above, the Court finds that the Motion should be and hereby is **DENIED**.

**SIGNED** this 14th day of January, 2026.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

4