# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PHENIX LONGHORN, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:23-CV-477-RWS-RSP |
| § | |
| AU OPTRONICS CORPORATION and § | |
| HISENSE ELECTRONICA MEXICO, § | |
| S.A. de C.V., et al., § | |
| § | |
| Defendants. § | |

## ORDER

The above-captioned action was referred to United States Magistrate Judge Roy S. Payne pursuant to 28 U.S.C. § 636(b)(1). Now before the Court are (1) Defendant AUO Corporation's Objections to Report and Recommendation Regarding AUO's Motion for Summary Judgment Under 35 U.S.C. § 271(g) (Docket No. 430); and (2) Defendants Hisense Electronica Mexico, S.A. de C.V., Hisense USA Corporation, and Hisense Visual Technology Co., Ltd.'s (collectively, "Hisense") Objection to Specific Portions of the Report and Recommendation Regarding Hisense's Motion for Summary Judgment Under 35 U.S.C. § 271(g) (Docket No. 431).

## BACKGROUND

On November 12, 2025, Hisense filed a Motion for Summary Judgment ("Hisense '788 MSJ") and AUO filed a Motion for Summary Judgment of No Infringement Under 35 U.S.C. § 271(b) and (c), or in the Alternative, No Pre-Suit Damages Under § 271(g) ("AUO '788 MSJ). Docket Nos. 253, 255. The motions are fully briefed. Docket Nos. 299, 308, 332, 333, 341, 364. The Magistrate Judge entered a Report and Recommendation ("R&R") denying, *inter alia*, AUO and Hisense's '788 MSJs with respect to § 271(g). Docket No. 413 at 11.

On January 13, 2026, AUO and Hisense filed objections to the Magistrate Judge's Report. Docket Nos. 430, 431. AUO objects that there is a *prima facie* case of § 271(g) infringement on three independent bases: (1) the R&R does not reach Phenix's waiver of the materiality and essentiality requirements; (2) the R&R incorrectly concludes that the asserted '788 claim is subject to § 271(g); and (3) the R&R incorrectly found a dispute of fact that the '788 process was performed on imported units. *See* Docket No. 430. Hisense's objections are the same as AUO's second basis for its objections. Docket No. 431 at 1 (citing Docket No. 413 at 9–11).

## LEGAL STANDARDS

Section 271(g) imposes liability for patent infringement on "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States . . . ." 35 U.S.C. § 271(g). However, there are constraints as to what qualifies as a product under § 271(g). First, a product must be "made by" a patented process. *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 615 (Fed. Cir. 2015) (explaining that § 271(g) is limited to the actual "making' of a product, "rather than [the] methods of testing a final product or intermediate substance to ensure that the intended product or substance has in fact been made."). Second, a product must not be materially changed by a subsequent process or become a trivial and nonessential component of another product. *See* 35 U.S.C. § 271(g)(1)–(2).

## ANALYSIS

**I.      Phenix Did Not Waive Its Arguments on Materiality and Essentiality**

AUO argues that Phenix has waived its arguments on the materiality and essentiality requirements under § 271(g). *See* Docket No. 430 at 1. Not so. Phenix has at least made specific arguments in its opposition on this issue. *See* Docket No. 308 at 12–13. AUO does not dispute that (1) whether the AUO products have been "materially changed by a subsequent process" and (2)

whether they are a "trivial and nonessential component of another product" are material fact issues that should be resolved by a jury. *See, e.g.*, *Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp, Inc.*, 249 F.3d 1341, 1352 (Fed. Cir. 2001) (with respect to claims of infringement under § 271(g), "[w]hether a change in a product is material is a factual determination, and is properly for the trier of fact."); *Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*, 2012 WL 12894799, at *2 (S.D. Tex. Sept. 5, 2012). AUO merely submits that Phenix has not presented evidence to create a genuine dispute of material fact. *See* Docket No. 430 at 1–2. The Court disagrees. In its response, Phenix referred the Court to evidence that, viewed in the light most favorable to it, creates a genuine dispute of material fact. *See, e.g.*, Docket No. 308-10 (Ex. H: Tang Dep.) at 31:20–36:24 (describing, *inter alia*, the "Golden Sample" process and subsequent processes included in the manufacturing of end products); Docket No. 308 (McAlexander Dep.) at 63:18–76:9 (same).

## II.     The Asserted '788 Claim is Subject to § 271(g)

Next, AUO argues that the asserted '788 claim is not one by which a product is "made" under § 271(g). Docket No. 430 at 2. AUO claims that this is because § 271(g) does not cover claims directed to "production of information." *Id.* It further contends that the R&R incorrectly characterizes that the asserted '788 claim is directed to an "integrated circuit," and argues that the claims are actually directed to "*testing* a display with an external optical sensor, *varying* data the display uses to adjust gamma to optimize values, and *storing* the *optimized* values into the same display." *Id.* at 3 (emphasis in original). Hisense's arguments are the same. *See* Docket No. 431.

Defendants' objections retread the same ground as their original briefing on their motions for summary judgment. In fact, at least part of the objections appears to be copy-pasted from their opening brief. *Compare* Docket No. 430 at 2–3 *with* Docket No. 255 at 8. Defendants cite no new cases over its original briefing (Docket Nos. 255, 333), and the Magistrate Judge has already

considered and distinguished the primary cases that Defendants cite (Docket No. 413 at 10). To reiterate, the asserted '788 claim is not directed to post-manufacture quality control testing, certification testing, or sending information messages. *See Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 615–618 (Fed. Cir. 2015); *Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*, 519 F. App'x 998, 1004–1005 (Fed. Cir. 2013); *Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2023 WL 4297570, at *3 (N.D. Cal. June 30, 2023). And it is not directed to mere production of information or the storage of data. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003); *Yangaroo Inc. v. Destiny Media Techs. Inc.*, 720 F. Supp. 2d 1034, 1035 (E.D. Wis. 2010), *aff'd*, 412 F. App'x 305 (Fed. Cir. 2011).

The Court agrees with the Magistrate Judge that the '788 Patent is instead directed to "a programmable buffer integrated circuit" that is incorporated into a finished "Liquid Crystal Display (LCD)" with a "voltage value" for "gamma correction" "stored in non-volatile, programmable memory," such that "the desired gamma correction is achieved" in the LCD. '788 Patent at 1:66–2:28. The end product is either the gamma-adjusted IC or the LCD panel. *See* Docket No. 413 at 10. Specifically, asserted claim 1 teaches a process of modifying a gamma reference voltage in a chip to ensure the desired gamma correction. '788 Patent at 7:24–42. Phenix presented sufficient evidence to create a genuine dispute of material fact as to whether modifying the gamma voltage is part of fabricating the chip or LCD panel. *See, e.g.*, Docket No. 308-10 (Ex. H: Tang Dep.) at 32:11–12 (describing work at a fabrication plant "responsible for the initial fabrication of the LCD panels"); 34:15–19 ("These fab parameters are controlled and measured to ensure that the resulting LCD panels meet the desired performance standards."); 38:7–10 (explaining that "AUO's Electrical Engineering department [] develops a gamma correction code including one set of gamma correction voltages to be used for that product" in relation to work at

the plant). Therefore, the claims may "entail the manufacturing of a physical product." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1323 (Fed. Cir. 2005). It is thus improper to grant summary judgment that the asserted '788 claim is not subject to § 271(g).

### III. There is a Genuine Dispute of Material Fact Concerning Whether the '788 Process Was Performed on Imported Units

AUO claims that Phenix did not advance any evidence that imported products were "made by" the patented process. Docket No. 430 at 4. It contends that the patented process was only performed, if at all, on pilot-stage units, not on units mass-produced and imported. *Id.*

On the other hand, Phenix, its expert, and AUO's own employees confirmed that the finished physical products imported into the United States contain AUO's branded Pgamma ICs that are each programmed by following the claimed process of the '788 Patent. *See, e.g.*, Docket No. 308-3 (Ex. A: Syong Tr.) at 44:20-47:11 ("The P-Gamma software will generate information which will burn on to the P-Gamma IC."), 50:19-25, 80:14-17; Docket No. 308-4 (Ex. B: McAlexander Tr.) at 50:14-54:25, 74:9-75:7, 188:2-190:2 ("The method is also practiced as they continue to update and upgrade or store the pgamma codes in the for-sale product."); Docket No. 308-11 (Ex. I: McAlexander Op. Rpt.), Attachment B at 7–8; Docket No. 308-6 (Ex. D: Phenix Infringement Contentions Ex. B-2) at 3-11 (showing AUO chips attached to TCON board); Docket No. 308-8 (Ex. F: Lin Tr.) at 59:10-61:1 (confirming that "AUO provides [] customers, [including Hisense,] with certain products that incorporate the G201, G301, and G1422" chips); Docket No. 308-10 (Ex. H: Tang Dep.) at 32:11–12; 38:7–10; Docket No. 308-5 (Ex. C: AUO Third Supp. Obj. to Phenix Second Rogs) at 11–14; Docket No. 308-7 (Ex. E: Fourth Supp. Obj. to Phenix First Rogs) at 30–35. Therefore, there exists a genuine dispute of material fact as to whether the claimed gamma adjustment process is performed by AUO as part of the mass production of each unit.

For the reasons above, the Court hereby **OVERRULES** AUO and Hisense's objections (Docket Nos. 430, 431) to the Magistrate Judge's R&R (Docket No. 413). The Court declines to reach the additional ground for summary judgment as to AUO under §§ 271(b)–(c), given the Court's findings on § 271(g).

## CONCLUSION

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Phenix objected. *See* 28 U.S.C. § 636(b)(1)(C) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and Phenix's objections are without merit. Accordingly, it is

**ORDERED** that AUO's objections (Docket No. 430) are **OVERRULED**. It is further

**ORDERED** that Defendants Hisense Mexico, Hisense USA, and Hisense Visual's objections (Docket No. 431) are **OVERRULED**. It is further

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No. 413) is **ADOPTED** as the opinion of the District Court, in light of this Order overruling Defendants' objections and the Court's separate order (Docket No. 425) overruling Phenix's objections to the same R&R. It is further

**ORDERED** that the Hisense '788 MSJ (Docket No. 253) is **GRANTED-IN-PART** and otherwise **DENIED**. It is further

**ORDERED** that the AUO '788 MSJ (Docket No. 255) is **DENIED**. It is further

**ORDERED** that the AUO Willfulness MSJ (Docket No. 250) is **GRANTED-IN-PART** and otherwise **DENIED**.

**So ORDERED and SIGNED this 15th day of January, 2026.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE